**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KATRINA F. WOOD,**

           **Plaintiff,**

**-vs-**                                                   **Case No. 6:12-cv-915-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**
_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on April 21, 2008, alleging an onset of disability on November 19, 2007, due to diabetes, peripheral neuropathy, high blood pressure, depression, and restless leg syndrome. R. 54-55, 65, 914-20. Her application was denied initially and upon reconsideration. R. 34-42, 45-48. Plaintiff requested a hearing, which was held on October 19,

2010, before Administrative Law Judge Gerald F. Murray (hereinafter referred to as "ALJ")[1]. R. 930-84. In a decision dated November 22, 2010, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 13-21. Plaintiff timely filed a Request for Review of the ALJ's decision and the Appeals Council denied Plaintiff's request on April 23, 2012. R. 4A-10. Plaintiff filed this action for judicial review on June 18, 2012. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was born August 28, 1972 and she was thirty-eighty years old at the time the ALJ issued his decision. R. 21, 54. She graduated from high school, completed one semester of college, and has the ability to read, write and speak English. R. 65, 963. Plaintiff has past work experience as a cashier and a residential care aide. R. 66-67, 961-62. The vocational expert described Plaintiff's past work as a cashier as unskilled, light work as generally performed and unskilled, medium work as performed by Plaintiff. R. 962.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of diabetes mellitus (Type II), peripheral neuropathy in both feet, hands, and arms, high blood pressure, depression, high cholesterol, and restless leg syndrome. R. 34, 37, 65. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from mild degenerative disc disease, diabetes mellitus neuropathy with pain, inactive multiple sclerosis, gall bladder disease, hypertension, and obesity, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15-16-18.

---

[1] The initial hearing on July 27, 2010 was rescheduled because there were records missing from the ones sent to the medical expert. R. 931.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of medium[2] work. R. 18. Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as a cashier. R. 20. The ALJ also found, alternatively, based on Plaintiff's vocational profile and RFC, that under the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Plaintiff could perform other work existing in significant numbers in the national economy, *i.e.*, 1400 light and sedentary unskilled occupations in the DOT. R. 20. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21.

Plaintiff now asserts three main points of error. First, she argues that the ALJ erred by failing to fully consider the opinions of her treating physician, Dr. Mickey and an examining psychiatrist, Dr. Raimondo. Second, she claims the ALJ erred by failing to properly incorporate all of the findings or state the weight given to the opinions of the state agency non-examining consultants. Third, Plaintiff contends the ALJ erred by filing to properly account for her functional limitations from peripheral neuropathy and obesity. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely

---

[2]Plaintiff contends that "medium" appears to be a scrivener's error as the ALJ's decision reflects that he intended to limit Plaintiff to light work. Doc. 19 at 15 (citing R. 20); the Commissioner argues that the ALJ's finding was Plaintiff could do light work even though the ALJ's decision said "medium." Doc. 20 at 7. Given the disposition of the other issues with the ALJ's decision and the remand to address them, the Court does not address the alleged "scrivener's error."

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.     RFC and treating physicians' opinions

Plaintiff claims that the ALJ should not have found her able to perform a full range of medium work. She argues that the ALJ failed to consider the full opinion of Ms. Wood's treating physician, Dr. Mickey, and the ALJ failed to even mention the opinion of Dr. Raimondo.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the ALJ erred in determining her RFC because he failed to consider the full opinion of Plaintiff's treating physician, Dr. Mickey and made no reference at all to the opinion from the examining psychiatrist, Dr. Raimondo, in his decision, and such omission was error in light of the Eleventh Circuit's decision in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011). In *Winschel*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments,

and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, *supra*). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178–79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Plaintiff argues that although the ALJ mentioned the opinion of Dr. Mickey, he failed to consider the treating physician's full opinions. The ALJ described Dr. Mickey's opinion as follows:

> Dr. Jamie [sic] Mickey completed a Residual Functional Capacity Questionnaire in November 2008. Dr. Mickey estimated that the claimant could sit, stand, or walk one to two hours in an eight hour work day. The claimant was also reported to be able to lift an estimated weight of ten pounds. While the claimant was reported to be unpredictable in the number of days she would miss once a month due to her impairments, Dr. Mickey opined that the claimant was employable (Exhibits 12F and 27F).

R. 19. Plaintiff argues that the ALJ erred in failing to consider the large caveat in Dr. Mickey's November 2008 opinion, *i.e.*, that Plaintiff was employable "pending a neurological workup." Doc. 19 at 10 (citing R. 258, 827). Plaintiff also contends it was error for the ALJ to fail to mention the subsequent opinions of Dr. Mickey from 2010 – after the "pending neurological workup" was completed. On April 8, 2010, Dr. Mickey noted that Plaintiff "has been newly diagnosed with multiple sclerosis and has been suffering from many of its complications. She has also been adjusting to a new medication regiment and has frequent and numerous doctors' appointments." R. 829 (note to Public Assistance requesting Plaintiff be excused from all activities from March 15, 2010 to April 8, 2010).

On June 8, 2010, Dr. Mickey completed a Medical Verification Form for Plaintiff indicating that Plaintiff had been diagnosed with multiple sclerosis and peripheral neuropathy. R. 831. Dr. Mickey opined Plaintiff could not work (sitting down or standing up), could not volunteer, and could

not go to school. R. 831. Dr. Mickey also opined that Plaintiff's ability to concentrate was limited due to pain. R. 831. Dr. Mickey opined Plaintiff's condition was permanent. R. 831.

The Commissioner argues (Doc. 20 at 7), although the ALJ actually determined Plaintiff could perform medium work, substantial evidence supports the ALJ's finding that Plaintiff could perform "light work," The Commissioner concedes that the ALJ did not mention Dr. Mickey's statement regarding a "pending neurological workup," but argues that the error was essentially harmless because there was no reason to believe that such a work up would have changed Dr. Mickey's statement that Plaintiff was "employable" in light of a subsequent functional assessment from December 2008. In the December 2008 functional assessment on the SSA form, as the Commissioner points out, Dr. Mickey noted Plaintiff would benefit from a "PT [physical therapy] evaluation," *not* a neurological workup. Doc. 20 at 7 (citing R. 260-66). The Commissioner does not make clear what difference further evaluation or testing – whether neurological or in physical therapy – would make on the ALJ's assessment, especially since the ALJ failed to cite or discuss the December 2008 evaluation or either evaluation from 2010. Moreover, the Commissioner cannot advance findings that were not put forth by the ALJ, and such findings cannot be used by the Court to affirm the final administrative decision. "If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Comm'r of Soc. Sec.,* 384 Fed. Appx. 893, 896 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.,* 417 U.S. 380, 397 (1974)).

Even in citing Dr. Mickey's December 8, 2008 RFC Assessment, the Commissioner glosses over Dr. Mickey's restrictions that Plaintiff could only stand and/or walk less than two hours and sit less than six hours in an eight-hour workday, which would limit Plaintiff to less than a full workday. R. 261-66. Dr. Mickey added that Plaintiff "had some generalized weakness on exam, however, unsure of functional capacity. Would benefit from PT evaluation." R. 261. However, on the exact same day, December 8, 2008, Dr. Mickey also completed a capacities form for Plaintiff's attorney

-7-

reflecting Plaintiff's diagnosis of poorly controlled Type II diabetes mellitus with diabetic neuropathy of "severe pain and numbness in both feet and lower legs," numbness and tingling in the neurological system, and she was (again) "employable pending *neurological* workup." R. 823-27. Dr. Mickey's repeated citation to "employable pending neurological workup" negates the Commissioner's argument that Dr. Mickey had dramatically changed his opinion about Plaintiff's functional abilities, subject only to a "PT evaluation." R. 261.

In answering the questions regarding Plaintiff's symptoms in December 2008, Dr. Mickey noted Plaintiff's condition was attributable to her medically determinable impairment of diabetes but her symptoms "seem[ed] more severe than clinically evident." R. 265. As of July 2008, Plaintiff was compliant with taking her oral antidiabetic pills, however she was admittedly non compliant with her insulin regimen because it made her feel nauseous and overall "lousy." R. 356. Dr. Mickey noted in August 2008 that he had to switch Plaintiff over from one type of insulin (Lantus) from another type (Levemir) as she was having significant side effects, including nausea, vomiting, and abdominal pain, and generalized weakness; since beginning the other insulin, she did not have those symptoms. R. 354, 357. Dr. Mickey noted Plaintiff was having sharp burning, shooting pains in her feet especially when she walked. R. 356. Plaintiff was subsequently referred to a neurologist in 2009 after two MRIs of the brain and cervical spine were positive for MS. R. 304, 307, 942.

Plaintiff began treatment with Dr. McDonald for multiple sclerosis in December 2009; he saw her in a follow up visit on March 22, 2010. R. 784-85. She reported that in December 2009 she had vision changes, had begun experiencing numbness from the waist down, incontinence, and uncontrollable jerks of her body at times. R. 784. She also reported that she was experiencing daily headaches. R. 784. On physical examination, Dr. McDonald noted Plaintiff had pin loss about halfway up her shin bilaterally. R. 784. Dr. McDonald thought Plaintiff looked fairly well but did have some problems with the multiple sclerosis. R. 785. By 2010, and after neurological consultation with the

-8-

neurologist, Dr. McDonald, Dr. Mickey recognized on two separate occasions that Plaintiff had been "newly diagnosed with multiple sclerosis," as well as diabetic peripheral neuropathy, and opined that Plaintiff could not work. R. 831. Dr. Mickey also opined that Plaintiff's ability to concentrate was limited due to pain and her condition was permanent. R. 831.

The Commissioner argues that "[a]lthough the ALJ did not specifically discuss these [2010 Dr. Mickey] opinions, this was not reversible error. Both of these opinions are based primarily on Plaintiff's diagnosis of multiple sclerosis . . . [and] a diagnosis by itself, says very little about the severity of the condition." Doc. 20 at 8. The Commissioner cites Plaintiff's records from her June 24, 2010 follow up appointment with Dr. McDonald, in which he noted she was doing "well physically" in that the MRI of the brain, cervical and thoracic spine were unchanged from prior MRIs and there was no multiple sclerosis in the thoracic spine; there was a C3 lesion unchanged from prior MRI and multiple issues, especially a right frontal lesion, on the MRI of the brain. R. 304, 782. Plaintiff had had "a slight sciatica symptom in the left lower extremity" and was still feeling "quite fatigued" with burning in her feet. R. 782. Dr. McDonald planned to treat Plaintiff's daily headaches with a new medication; she did have a lot of give away weakness, but her strength was normal. R. 782-83. Dr. McDonald opined that he did not "see where she was actually disabled at this time from the MS [multiple sclerosis]." R. 783. Of course, Dr. McDonald's treatment of Plaintiff was limited to multiple sclerosis, not for diabetes or depression, and in conjunction with her primary care physician, Dr. Mickey, who was responsible for her overall care.

Plaintiff's multiple sclerosis increased as noted in Halifax Medical Center notes from December of 2009. Plaintiff was newly diagnosed with demyelinating disease that was possibly multiple sclerosis when she was admitted, complaining of severe, debilitating headache, burning pain in neck and head and blurred vision, as well as nausea and increased frequency of uncontrolled jerking movements of all of her extremities, and generalized weakness in all of her extremities. R.706, 708.

-9-

The brain MRI at that time showed scattered white matter abnormalities unchanged in size but one lesion appeared slightly more intense in the left frontal lobe; she also was experiencing tremors. R. 737, 744. One month before Plaintiff's administrative hearing, in September 2010, Dr. McDonald's notes indicate Plaintiff's multiple sclerosis was stable but she was having low back pain intermittently running down the left side, burning on the bottom of her feet, headaches two times per week, bitemporal in the back of her head; she continued on insulin and her sugars had been much better; and she had dropped quite a bit of weight. R. 871.  He opined she "appeared to have significant neuropathy, probably diabetic and also some carpal tunnel" as well as some sciatic symptoms. R. 872. At the hearing, the medical expert in oncology, rheumatology, and internal medicine, Dr. Sklaroff, testified:

> So the patient has diabetic neuropathy, as well as the depression and all the other psychiatric stuff. . . . The key new point that was added to the record this past year was a history of MS (multiple sclerosis), which had been documented on prior MRI scans, but when repeated did not show anything new, and the neurological examination was negative. So, she probably had some sensory residua from the MS, but does not have an active event; at least, up to and including now when compared with the progress note of April, when all this began to emerge in the record.
> * * *
> I would say the only key issue is the diabetic neuropathy . . . is causing pain . . . and which is understandable when a patient's had diabetes for awhile.

R. 937-38. Dr. Sklaroff noted that Plaintiff's compliance was a problem, but he was not "hard-nosed" about that because "long-term diabetes management is difficult," and he confirmed there was evidence in the record of Plaintiff's neuropathy. R. 945-46. He further opined that Plaintiff could be showing active peripheral neuropathy and possibly an "asymmetric component" ascribable to a prior multiple sclerosis event, which would preclude Plaintiff from s lifting, bending, stooping, walking, sitting, standing and so forth. R. 948-49.

The Commissioner admits that the ALJ did not "specifically mention the [2010] opinions from Dr. Mickey," but argues that Plaintiff "failed to show how she was prejudiced and, therefore, remanding the case to the agency would serve no practical purpose." Doc. 20 at 9 (citing *Shinseki v.*

-10-

*Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination). The Commissioner cites an inapposite pre-*Winschel* case and an unpublished case about agency rules in support. Doc. 20 at 9 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) and *Carroll v. Commissioner of Soc. Sec.*, 453 F. App'x 889, 892 (11th Cir. Dec. 12, 2011)). The Commissioner has chosen to ignore the holding of *Winschel*.

Pursuant to *Winschel,* whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefore. 631 F.3d at 1179. Even treatment notes may constitute an opinion, as noted in *Winschel*:

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).
> * * *
> The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a "medical opinion," but this argument ignores the language of the regulations. The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement [ ] from [a] physician ... that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

*Winschel,* 631 F.3d 1176, 1178-79. It was error for the ALJ to rely on a select portion of Dr. Mickey's 2008 opinion that Plaintiff was "employable" without noting it was subject to a "neurological examination." The ALJ's opinion was not based on substantial evidence when he omitted and failed to discuss Dr. Mickey's 2010 opinions of Plaintiff's RFC.

-11-

In addition, Plaintiff argues that the ALJ erred in failing to mention or discuss the mental impairment questionnaire and opinion of the psychiatrist, Dr. Raimondo. R. 858-61. In omitting Dr. Raimondo's opinion, the ALJ found instead that Plaintiff's "medically determinable impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." R. 17. The ALJ relied on a mental health impairment questionnaire from Halifax Family Health Center from August 2008 to support this finding. R. 17.

The Commissioner concedes that the ALJ did not discuss Dr. Raimondo's opinion, but argues the ALJ's omission does not rise to the level of reversible error because Dr. Raimondo found Plaintiff seriously limited in only two mental areas which would not "take away from the ALJ's finding that Plaintiff could perform [her] past relevant work as a cashier." Doc. 20 at 9 (citing R. 861). Once again, the Commissioner ignores the requirement of the *Winschel* that the ALJ must "state with particularity" the weight given to a psychiatrist's statements "reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite her impairments," and the claimant's mental restrictions" and the ALJ's reasoning. *See Winschel*, 631 F.3d at 1179. Here, Dr. Raimondo completed a mental impairment questionnaire on September 14, 2010 in which he reviewed Plaintiff's records and completed a clinical interview, finding Plaintiff "seriously limited, but not precluded" in carrying out detailed instructions and dealing with stress of semiskilled and skilled work. R. 858-63.

The Commissioner argues that the ALJ's lack of discussion of Dr. Raimondo's findings in these two areas does not take away from the ALJ's finding that Plaintiff could perform her past relevant work as a cashier because the VE had identified Plaintiff's past relevant cashier position as unskilled work needing little or no judgment to do simple duties that could be learned on the job in a short period of time. See 20 C.F.R. § 404.1568(a). The Commissioner contends that, even accepting

Dr. Raimondo's limitations with respect to carrying out detailed instructions and dealing with stress of semiskilled and skilled work, the ALJ could still have found Plaintiff able to perform her past relevant unskilled work as a cashier. However, Dr. Raimondo's opinion noted more than just the two areas identified by the Commissioner, and one of which was directly addressed in *Winschel*, which held that the ALJ must account – explicitly or implicitly– for limitations in concentration, persistence, and pace. 631 F.3d at 1180-81.

Not only did the ALJ fail to discuss Dr. Raimondo's opinion, the ALJ also failed to account for Plaintiff's limitations in concentration, persistence, and pace as opined by Dr. Raimondo. R. 862. Dr. Raimondo noted Plaintiff's constricted affect, anxious mood, ruminations and hopeless thinking. R. 858. He also checked off from a list of other signs and symptoms: decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, psychomotor agitation or retardation, pathological dependence, passivity or aggressivity, persistent disturbances of mood or affect; apprehensive expectation; emotional withdrawal or isolation; motor tension; autonomic hyperactivity; and sleep disturbance. R. 859. Dr. Raimondo opined Plaintiff was seriously limited, but not precluded, in her ability to carry out detailed instructions and deal with stress of semi-skilled and skilled work. R. 861. Dr. Raimondo also opined Plaintiff was moderately limited in her ability to maintain social functioning and maintain concentration, persistence, or pace and had suffered one or two episodes of decompensation. R. 862. Dr. Raimondo opined Plaintiff's impairments had lasted for over twelve months and he anticipated she would miss more than four days per month due to her impairments. R. 863. He opined that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation; and she also had a medical condition that was not related to psychiatry. R. 863.

The ALJ's failure to discuss Dr. Raimondo's opinion from the September 2010 Questionnaire, and his failure to note specifically Plaintiff's moderate limitations in concentration, persistence, and

pace (R. 869), and factor them into Plaintiff's RFC, was error. It was also error for the ALJ not to discuss Dr. Raimondo's opinion that Plaintiff was seriously limited but not precluded from carrying out detailed instructions and dealing with stress of semiskilled and skilled work. R. 861. As such, the ALJ's decision was not based on substantial evidence.

### B. State agency physician opinions

Plaintiff argues that the ALJ erred in failing to incorporate all of the findings of the non-examining reviewing physician into Plaintiff's residual functional capacity assessment, even though the ALJ accorded "significant weight" to his opinion. Plaintiff also argues that the ALJ erred in failing to comment on the opinion of the medical expert, Robert Sklaroff, M.D., who testified at the administrative hearing.

The ALJ gave significant weigh to the opinion of the non-examining reviewing physician, Dr. Puestow, who opined Plaintiff "has credible foot symptoms due to sensory peripheral neuropathy." R. 589. However, the ALJ did not adopt his opinion that she could never climb ladders, ropes, or scaffolds; she could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl; and she should avoid concentrated exposure to hazards, which Plaintiff contends the ALJ should have included. R. 586, 588. The Commissioner argues that although the ALJ did not include these specific limitations into his RFC finding or explain why he excluded them, Plaintiff has failed to show that she would not have been able to perform her past relevant work as a cashier given these limitations because the cashier job involves none of the precluded activities. Doc. 20 (citing U.S. Dep't of Labor, Dictionary of Occupational Titles § 311.472-010, 1991 WL 672682 (4th ed. 1991)). Plaintiff also argues that if the ALJ had included the additional limitations, he should have found that Plaintiff was incapable of performing her past work as a cashier as either actually or generally performed, and the burden would have shifted for the ALJ to determine if there were other jobs in the national economy that Plaintiff could perform, including the appropriate limitations. Since Plaintiff's limitations incuded

non-exertional impairments, Plaintiff argues, the ALJ would have been required to elicit testimony from a vocational expert. On remand the ALJ will determine whether Plaintiff's RFC should have included limitations from climbing ladders, ropes, or scaffolds, ramps or stairs, and balancing, stooping, kneeling, crouching or crawling; and avoiding concentrated exposure to hazards. If so, the ALJ will consider whether Plaintiff's past relevant work would be precluded and (if necessary) whether she could perform other work in the economy, relying on a VE if necessary.

Plaintiff also argued that ALJ erred in failing to state what weight, if any, he accorded to the opinion of the testifying medical expert, Dr. Sklaroff, who testified at the administrative hearing after reviewing Plaintiff's records. R. 935-60. Plaintiff argues that the ALJ only mentioned the medical expert's testimony to support his finding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of Social Security's listed impairments (R. 18), and failed to mention that he testified Plaintiff's peripheral neuropathy and obesity would impact her ability to sit, stand, walk, lift, bend, stoop and climb. R. 949-50. Dr. Sklaroff also testified that he would defer to Plaintiff's treating physician, Dr. Mickey, with regards to her physical restrictions. R. 949.

The Commissioner concedes that it is not clear which of Dr. Mickey's opinion Dr. Sklaroff was referencing, but argues the ALJ properly considered Dr. Mickey's December 2008 opinion. As explained above, the ALJ erred in his consideration of Dr. Mickey's opinion and, here, has failed to make clear how he considered Dr. Sklaroff's opinion. As such, the ALJ's decision was not based on substantial evidence and must be reversed.

### C. Peripheral neuropathy and obesity

Plaintiff argues that the ALJ failed to account for Plaintiff's functional limitations arising from her peripheral neuropathy and obesity in the residual functional capacity assessment. The Commissioner argues the ALJ properly considered Dr. Mickey's and the state agency reviewing

-15-

physician's opinions in addressing Plaintiff's peripheral neuropathy and obesity. The ALJ found both conditions to be severe impairments but failed to include or address them properly in the context of Plaintiff's RFC.

According to SSR 02-01p, the Social Security Administration "will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." The testifying medical expert, Dr. Sklaroff, opined that Plaintiff's obesity would impact her ability to sit, stand, walk, lift, bend, stoop and climb. R. 949-50. The ALJ failed to incorporate any limitations Plaintiff's obesity would cause when formulating the residual functional capacity assessment. On remand, the ALJ will include limitations from Plaintiff's severe peripheral neuropathy and obesity, as appropriate, in the residual functional capacity assessment.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 16, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record